685 P.2d 396

**Kraig L. PATTERSON, Plaintiff-Appellant,**

v.

**GLOBE AMERICAN CASUALTY COMPANY, a foreign insurance corporation, Defendant-Appellee.**

**No. 7451.**

Court of Appeals of New Mexico.

July 10, 1984.

Ralph D. Shamas, Roswell, for plaintiff-appellant.

John P. Cusack, Cusack & Associates, Roswell, for defendant-appellee.

**OPINION**

ALARID, Judge.

Plaintiff (Kraig L. Patterson) sued defendant's (Globe American Casualty Com-

pany) insured for injuries he sustained in an automobile accident. Plaintiff allegedly made a claim against defendant's insured and negotiated with defendant for purposes of settling the claim. Plaintiff further alleged, generally and specifically, that defendant engaged in conduct prohibited by Section 59–11–13(I) of the Unfair Insurance Practices Act, NMSA 1978, §§ 59–11–9 to –19 (the Act), and that he was damaged thereby. He prayed for compensatory and punitive damages.

The underlying dispute here concerns the amount of policy limits. Plaintiff alleges he made a policy limits demand, which was refused. Plaintiff's suit against the insured was tried, resulting in a $27,500 verdict for plaintiff. Defendant paid only $15,000, which it contends was the policy limit. Plaintiff sued the insurer directly. Defendant denied in its answer the material allegations of the complaint.

Defendant moved for dismissal on grounds that subject matter jurisdiction was lacking. Defendant contends that the Act neither explicitly nor implicitly creates a private cause of action against an insurer in favor of third party claimants. Therefore, says defendant, the complaint fails to state a claim upon which the district court could grant relief. Following a hearing at which argument was heard the district court dismissed the complaint. Plaintiff appeals. We affirm.

**DISCUSSION**

 For purposes of the motion, we take the complaint's allegations as true. *Bottijliso v. Hutchison Fruit Co.*, 96 N.M. 789, 635 P.2d 992 (Ct.App.1981). To state a cause of action, the complaint must show some right possessed by the plaintiff and some corresponding duty resting upon the defendant, and that such right has been invaded and such duty violated by some wrongful act or omission of defendant. *York v. American Nat. Bank of Silver City, N.M.*, 40 N.M. 123, 55 P.2d 737 (1936).

Defendant does not dispute that the Act creates a right-duty relationship, but contends that the Act does not create a private remedy. In deference to the Legislature,

suggests defendant, we should not create such a remedy because the Act vests the Superintendent of Insurance with exclusive remedial powers. See §§ 59–11–14 to –19. The issue of whether the Act creates private rights of action has not been decided in New Mexico, *see Gonzales v. United States Fidelity & Guaranty Co.*, 99 N.M. 432, 659 P.2d 318 (Ct.App.1983), *but see State Farm Fire & Casualty Co. v. Price*, 101 N.M. 438, 684 P.2d 524 (Ct.App. 1984), and has been decided elsewhere with mixed results. *Cf. French Market Plaza Corp. v. Sequoia Insurance Co.*, 480 F.Supp. 821 (E.D.La.1979); *Royal Globe Insurance Co. v. Superior Court of Butte County*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979); *Klaudt v. Flink*, Mont., 658 P.2d 1065 (1983); *Jenkins v. J.C. Penney Casualty Insurance Co.*, 280 S.E.2d 252 (W.Va.1981) (cases where a private cause of action was recognized); *Scroggins v. Allstate Insurance Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Seeman v. Liberty Mutual Insurance Co.*, 322 N.W.2d 35 (Iowa 1982); *Retail Clerks Welfare Fund, Local No. 1049, AFL–CIO v. Continental Casualty Co.*, 71 N.J.Super. 221, 176 A.2d 524 (1961); *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.*, 494 Pa. 501, 431 A.2d 966 (1981); *Russell v. Hartford Casualty Insurance Co.*, 548 S.W.2d 737 (Tex.Civ.App.1977); *Wilder v. Aetna Life & Casualty Insurance Co.*, 140 Vt. 16, 433 A.2d 309 (1981); *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 307 N.W.2d 256 (1981) (cases where a private action was not recognized).

 Defendant argues that the cases in which other courts have implied a cause of action in favor of third parties against insurers involve statutes which differ from New Mexico's version of the Act. *Jenkins; Royal Globe; Klaudt.* We agree that the statutes construed in these cases are not identical to our own. Our task is to determine whether the language of New Mexico's statute supports the reading plaintiff asserts. Sections 59–11–9 to –22 do not explicitly create a private right to sue in-

surance companies. The Act is unclear or ambiguous on this point. Where a statute is ambiguous or its meaning unclear, we may resort to rules of construction in order to resolve the ambiguity. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973).

The guiding principle of statutory construction is that the statute should be interpreted consistent with legislative intent. *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977). In ascertaining legislative intent, we look not only to the language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied. *Chavez v. State Farm Mutual Automobile Insurance Co.*, 87 N.M. 327, 533 P.2d 100 (1975).

The purpose of the Act "is to regulate trade practices in the business of insurance in accordance with the intent of congress ...." Section 59–11–10 ("Declaration of Purpose"). *See* 15 U.S.C. §§ 1011–1015 (1976). Congress in Sections 1011 to 1015 responded to the Supreme Court decision of *United States v. South-Eastern Underwriters Association*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), which concluded that "[t]he business of insurance was commerce and, therefore, subject to the Sherman Act ... and the Clayton Act ...." 1945 U.S. Code Cong.Serv. 670, 671.

> Inevitable uncertainties which followed the handing down of the decision ... with respect to the constitutionality of State laws, have raised questions in the minds of insurance executives, State insurance officials, and others as to the validity of State tax laws as well as State regulatory provisions; thus making desirable legislation by the Congress to stabilize the general situation.

*Id.* To help stabilize the situation Congress suspended the application of the Sherman Act, the Clayton Act and others to state insurance statutes. 15 U.S.C. § 1013. Congress did not, however, address the private remedy issue presently before us.

Section 59–11–10 of the New Mexico Act specifies that its purpose is to regulate insurance practices "by defining or providing for the determination of all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." The Act confers upon the Superintendent of Insurance the power to examine and investigate the affairs of insurance companies for unfair or deceptive conduct, Section 59–11–14; it also provides for a hearing before the Superintendent, Section 59–11–15; for administrative penalties, Section 59–11–16; injunctions, Section 59–11–17; and civil penalties, Section 59–11–18. Finally, the Act allows for appeal to the court of appeals. Section 59–11–19. The injunction and civil penalty provisions permit the Superintendent to enforce the Act in the district court. There is no provision in the Act which confers upon district courts the authority to entertain private causes of action under the Act by interested parties against insurance carriers.

We need not consider the numerous decisions from other jurisdictions cited to us by the parties. The defendant refers us to various New Mexico statutes wherein private rights of action have been expressly created. *E.g.*, NMSA 1978, § 56–3–7 (liability of credit bureaus to consumers); NMSA 1978, § 56–8–13 (usury); NMSA 1978, § 56–8–29 (Cum.Supp.1983)(residential home loan interest); NMSA 1978, § 57–1–3 (Cum.Supp.1983)(restraints of trade); NMSA 1978, § 57–5–14 (motion picture theaters); NMSA 1978, § 57–11–12 (automobile financing); NMSA 1978, 57–12–10 (unfair trade practices); NMSA 1978, § 57–13–6 (pyramid sales); NMSA 1978, § 57–14–8 (price discrimination); NMSA 1978, § 57–16–13 (motor vehicle dealers franchising). These statutes show the Legislature knows how to create a private remedy if it intends to do so. By negative inference, the Legislature's failure to provide for a private action suggests that it did not intend to create one.

■ *Munro v. City of Albuquerque*, 48 N.M. 306, 150 P.2d 733 (1943) supports defendant's argument. *Munro* stands for the proposition that when a right is created which did not exist at common law and for that right a remedy is by statute prescribed, the whole matter of right and remedy is within the statute and no part of either otherwise exists. *See Hittson v. Chicago, R.I. & P. Ry. Co.*, 43 N.M. 122, 86 P.2d 1037 (1939). *Munro* is still the law. *The First National Bank of Santa Fe v. Southwest Yacht & Marine Supply Corp.*, 101 N.M. 431, 684 P.2d 517 (1984). We must presume that the Legislature in enacting a statute was informed as to existing statutory and common law. *Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971). The Legislature knew how to create a private remedy, and also knew that its provision for a remedy under the Act in Sections 59–11–14 to –19 made that remedy exclusive. *Munro.* No showing was made to suggest that the Legislature intended other than to establish an exclusive remedy under the Act. Our conclusion is that the Legislature did not intend to create a private remedy under the Act now in effect. Nothing in this opinion should be read to exclude private actions arising against an insurer from sources other than the Act. *See, e.g., Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App.1976).

We affirm. Appellant shall bear appellate costs.

**IT IS SO ORDERED.**

WOOD and MINZNER, JJ., concur.