745 P.2d 714

**Ernestine O. MARTINEZ and Vincent P. Martinez, Co-personal Representatives of the Estate of Alex B. Martinez, Deceased, Plaintiffs–Appellants,**

**v.**

**KAUNE CORPORATION, d/b/a Kaune's Food Store; Max Romero, Genevieve Romero; State Health and Environment Division, State of New Mexico, and John Does I Through IV, Defendants–Appellees.**

**No. 9105.**

Court of Appeals of New Mexico.

Oct. 8, 1987.

Certiorari Denied Nov. 5, 1987.

**490**

Michael E. Vigil, Marchiondo & Berry, P.A., Albuquerque, for plaintiffs-appellants.

Bradford V. Coryell, Montgomery & Andrews, P.A., Santa Fe, for defendants-appellees.

## OPINION

BIVINS, Judge.

In this wrongful death action, plaintiffs claim their decedent, Alex B. Martinez, fell ill and died after eating "Queso Blanco" cheese manufactured by defendants Max Romero and Genevieve Romero and sold by defendant Kaune's Food Store. This appeal concerns only the state defendants, in whose favor the trial court granted summary judgment. It raises the issue of whether the waiver of immunity for the negligence of public employees in the operation or maintenance of any building includes the inspections of foods and food manufacturing or processing operations. We hold it does not and affirm.

In their complaint against the State Health and Environment Improvement Division and four "John Doe" defendants, plaintiffs allege the state defendants either failed to inspect, or negligently inspected, Kaune's food-sale operation and should have seized the contaminated cheese. They also claim the state defendants failed to inspect the Romeros' cows and should have banned the sale of raw-milk products by those defendants. To support these claims, plaintiffs cite various statutes governing the inspection of food, as well as state licensing regulations affecting food distributors.

The state defendants were sued under the Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl.1986). These defendants moved to dismiss for failure to state a claim upon which relief can be granted, arguing that the conduct complained of has not been waived under the Tort Claims Act and that they are, therefore, immune from suit. Because matters outside the pleadings were considered, the trial court treated the state defendants' motion as one for summary judgment. SCRA 1986, 1–012(B); *Transamerica Ins. Co. v. Sydow*, 97 N.M. 51, 636 P.2d 322 (Ct.App.1981).

Since it provides a clear statement as to how courts approach tort claims against governmental entities and public employees, we quote from *Begay v. State*, 104 N.M. 483, 486, 723 P.2d 252, 255 (Ct.App. 1985), *rev'd on other grounds, Smialek v. Begay*, 104 N.M. 375, 721 P.2d 1306 (1986):

Common law sovereign immunity for tort actions was abolished by the Supreme Court in *Hicks v. State*, 88 N.M. 588, 544 P.2d 1153 (1975). The following year, the New Mexico Legislature responded by passing the Tort Claims Act which reinstated governmental immunity except in eight classes of activities which are specifically set out as exemptions within the Act. *Fireman's Fund Insurance Company v. Tucker*, 95 N.M. 56, 618 P.2d 894 (Ct.App.1980). Section 41–4–2 of the Act provides in part: "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act * * *." Further, Section 41–4–4 declares that governmental entities and public employees, while acting within the scope of their duties, shall be immune from liability for any tort except as waived by the Act. *Tompkins v. Carlsbad Irrigation District*, 96 N.M. 368, 630 P.2d 767 (Ct.App.1980). The public policy declaration of Section 41–4–2, and the immunities proviso of Section 41–4–4, taken together, require that plaintiffs' cause of action must fit within one of the exceptions to the immunity granted to governmental entities and public employees. If immunity has been waived, the particular agency that caused the harm may be held liable for the negligent act or omission of the public employee.

Plaintiffs rely on Section 41–4–6 as the basis for waiving immunity. That section provides:

The immunity granted pursuant to Subsection A of Section 41–4–4 NMSA 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the *operation or maintenance of any building*, public park, machinery, equipment or furnishings. Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water. [Emphasis added.]

In applying any waiver of immunity, we first determine whether the legislative intent can be ascertained from the plain meaning of the statute. *Smith v. Village of Corrales*, 103 N.M. 734, 713 P.2d 4 (Ct.App.1985). We do not read into the statute language that is not there. *Id.* In the instant case, we cannot agree that the legislature intended to include the inspection of foods and food processing within the meaning of Section 41–4–6.

In considering a similar contention, we held in *Wittkowski v. State*, 103 N.M. 526, 710 P.2d 93 (Ct.App.1985), *modified on other grounds, Abalos v. Bernalillo County District Attorney's Office*, 105 N.M. 554, 734 P.2d 794 (Ct.App.1987), that Section 41–4–6 covered premises liability situations only. In *Wittkowski*, we rejected the claim that since the penitentiary is a building, the operation of that building must include the security, custody and classification of inmates. For the same reason, we must reject plaintiffs' claims here. Those claims do not involve any kind of claimed physical defect in a building. *Wittkowski* is controlling. *See also Pemberton v. Cordova*, 105 N.M. 476, 734 P.2d 254 (Ct.App. 1987) (Section 41–4–6 will not be expanded to include negligent supervision of students; Section 41–4–6 waives immunity only for physical defects). The state discusses at length the issue of whether the state operated or maintained the dairy or food store. Because we dispose of the case on the above ground, we need not consider this issue.

Plaintiffs urge that in determining whether any exception of the Tort Claims Act applies, reference must be made to traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty. *See* § 41–4–2. They then proceed to outline the duties prescribed by the Food Service Sanitation Act, NMSA 1978, Sections 25–1–1 to –14 (Orig.Pamp. & Cum.Supp.1985 [now Repl.Pamp.1987]), followed by a discussion of how the state defendants breached those duties. Plaintiffs then cite to foreign cases in which governmental agencies have been held liable for negligent inspections in various settings. In ruling that there was no waiver of immunity, the trial court assumed, as do we, that an underlying cause of action exists. That is not the focus of this appeal. Notwithstanding the possibility that plaintiffs might have a cause of action for breach of duty outside the Tort Claims Act, such is of no consequence unless immunity has been waived for the activities giving rise to that breach. Here, there has been no waiver. *Pemberton v. Cordova.*

In asserting their claim that Section 41–4–6 provides the necessary waiver, plaintiffs ask us to compare that section with Section 41–4–7, which waives immunity for the negligent operation of airports. Section 41–4–7 contains an exception to the waiver of liability if the employee is complying with federal or state law or regulation governing the use or operation of airports. Plaintiffs argue that if the legislature had intended to create a similar exception for the operation or maintenance of buildings under Section 41–4–6, it knew how to do so. Because the legislature did not add a similar exception, plaintiff contends the legislature "intended to allow liability [under Section 41–4–6] * * * when the condition which resulted arose out of compliance, or the lack thereof, with federal or state law or regulations governing the use and operation of said buildings, machinery, equipment, or furnishings." We are not persuaded. Under our cases, Sec-

tion 41–4–6 is plain on its face. Since it does not cover the activities involved, there is no reason to carve out any exception.

We do not view this result as inconsistent with *Miller v. New Mexico Department of Transportation*, 106 N.M. 253, 741 P.2d 1374 (1987). *Miller* deals with the direct involvement of the Department of Transportation in issuing a permit for an oversized vehicle. The supreme court examined both the legislative intent and the meaning of "maintenance of a highway" under Section 41–4–11(A) and concluded that issuance of the permit fell within that statutory waiver of immunity. The supreme court reasoned that the legislature intended to protect the general public from injury by imposing liability when governmental agencies failed to maintain safe public highways. *Miller*, however, addressed a specific use for a specific time and place. Such distinguishes that case from the instant case. Moreover, we do not believe the supreme court in *Miller* intended to extend liability to situations as presented in our case. To do so would open the door to liability for virtually all activities licensed or inspected by state agencies. The licensing scheme is too pervasive to extend such liability to the state. Imposing such liability would circumvent the very grant of immunity provided by the Tort Claims Act, subject to the specific waivers of immunity outlined in Sections 41–4–5 to –12. The "operation or maintenance of any building" waiver of immunity provided by Section 41–4–6 cannot extend to the state's licensing or inspection of the dairy farm or food store in our case.

We affirm the trial court. Plaintiffs shall pay the costs of their appeal.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.