1998-NMCA-006

952 P.2d 978

**Bill WILLIAMS, parent and next friend of Randy Williams, a minor child, Plaintiff–Appellant,**

v.

**CENTRAL CONSOLIDATED SCHOOL DISTRICT, Defendant–Appellee,**

and Annelle Darby, Chambers, Campbell & Partners Architects, Ike J. Monty, Inc., General Contractor, Defendants.

No. 17672.

Court of Appeals of New Mexico.

Nov. 12, 1997.

Certiorari Denied Dec. 30, 1997.

Victor A. Titus, Titus & Murphy, Farmington, for Plaintiff–Appellant.

Kevin M. Brown, Brown and German, Albuquerque, for Defendant–Appellee.

## OPINION

BOSSON, Judge.

1. This opinion is substituted on the Court's own motion for that previously issued. The motion for rehearing is denied. This is a premises liability claim under the Tort Claims Act, NMSA 1978, Section 41–4–6 (1977) for negligent operation or maintenance of a public building by a school district (Defendant). We decide whether suit under the Act is precluded simply because a dangerous condition in the physical premises may have been caused initially by a defective design in the building. We hold that the Act does not afford Defendant immunity, and we reverse the district court's order to the contrary and remand for further proceedings.

## BACKGROUND

2. Plaintiff was a student at Kirtland Middle School in the Central Consolidated School District. In May 1993, he was involved in an altercation with another student in a school hallway. He was pushed, and when he put out his arms to break his fall, Plaintiff's left arm went through a glass window in the hallway severely lacerating his arm at the wrist. The window was not safety glass and had no protective device to shield it.

3. Approximately six years earlier, during 1987–88, the school building had undergone extensive remodeling. The school district had hired independent contractors, an architect and a contractor, to design and construct an addition to the building. The window in question had originally been part of an exterior wall. As part of the remodeling, the building was expanded so that the window became part of an interior wall separating the school's vocational shop and laboratory from the main hallway. The addition to the school building resulted in increased student traffic in that part of the hallway close to the window. Student lockers were located in the same area and, allegedly, horseplay among students was common.

4. Plaintiff filed suit against the Defendant school district for negligence "in placing the glass window indoors in that the glass was not shatterproof and there were no adequate guards around the window which would prevent someone from falling through it." The school district responded with a motion for summary judgment claiming immunity under Section 41–4–6 of the Tort Claims Act. After entertaining argument of counsel, Judge Eastburn agreed with the school district's argument and indicated he would find for Defendant. The case was then reassigned, and Judge Thrower signed an order dismissing the case on the basis of Judge Eastburn's ruling.

## DISCUSSION

### Motion for Summary Judgment

5. Initially, we note the confusing procedural posture of the court's ruling below. It is clear that Defendant brought a motion for summary judgment accompanied by appro-

priate factual allegations, depositions, and affidavits. Plaintiff responded, concurring in the factual representations for purposes of deciding this motion and arguing as a matter of law that Defendant did not have immunity under the Act. Then, shortly before the hearing on the motion, Plaintiff filed a first amended complaint which added the architect and the contractor as defendants and for the first time alleged that Defendant school district "negligently maintained the school building by not identifying and replacing the hazard which they knew or should have known was dangerous to children just as it injured Plaintiff." The parties also took additional depositions shortly before the summary judgment hearing, although it is not clear whether those depositions were before the court at the time of its ruling.

6. Despite the factual allegations that accompanied Defendant's motion, Judge Eastburn indicated orally from the bench that he would consider the matter as a motion to dismiss, and Judge Thrower then signed an order to that same effect, dismissing Plaintiff's case with prejudice. The court did not grant judgment for Defendant. The order cited to the lack of any genuine issue of material fact and ruled as a matter of law that: "The issues raised in this action relate to a design defect rather than a question of maintenance."

■ 7. Despite the court's characterization of Defendant's pleading as a motion to dismiss, we will review the court's order as if it were a summary judgment. *See Sanders v. Estate of Sanders,* 122 N.M. 468, 471, 927 P.2d 23, 26 (Ct.App.) (when evidence outside the pleadings has been considered, a motion to dismiss is analyzed as a motion for summary judgment), *cert. denied,* 122 N.M. 279, 923 P.2d 1164 (1996). The standard of review for a motion for summary judgment is whether there are any genuine issues of material fact and whether the moving party is entitled to summary judgment as a matter of law. *Id.; see* Rule 1–056(C), NMRA 1997. The principal legal question before us is whether the court erred as a matter of law when it dismissed Plaintiff's claims because they "relate to a design defect rather than a question of maintenance."

## Section 41–4–6 of the Tort Claims Act

8. Section 41–4–6 waives governmental immunity for injury "caused by the negligence of public employees . . . in the operation or maintenance of any building." It was apparently undisputed below, at least between these two parties, that the architect had the responsibility of either altering or removing this glass window to conform with applicable building codes and sound engineering practices. Plaintiff alleges and produced expert opinion that the architect's failure to correct the problem at the time of remodeling rendered the window unsafe for its intended use. Defendant argued below that altering the window was a design function, delegated to an independent contractor (the architect), and that negligence in design does not fall within the waiver of immunity for "operation or maintenance" of a building as set forth in Section 41–4–6. Plaintiff, on the other hand, pled and argued that, as part of Defendant's duty to exercise reasonable care in the "operation or maintenance" of the school building, Defendant should have identified the glass window in its new location as dangerous to children like Plaintiff and Defendant either should have replaced it with safety glass or undertaken measures to protect children from the risk such as placing a protective bar across it. The district court agreed with Defendant, reasoning that even if the school district later knew, or through the exercise of reasonable care should have known, of the dangerous condition of the window, the mere fact that the defect originated in design rendered Defendant immune from suit. As we will discuss, the district court may have misconstrued certain precedent of this Court which we take this opportunity to clarify.

■ 9. A close reading of the Act shows that under the clear wording of Section 41–4–6 there is *no* exception to premises liability for defects originating in design. In fact, that section of the Act provides a blanket waiver of immunity for "operation or maintenance" of a public building without exception for negligence in design. By way of contrast, NMSA 1978, Section 41–4–11(B) (1991) of the Act allows claims for negligent "mainte-

nance" of highways, but carves out an express exception for "a defect in plan or design ." Therefore, if any logical inference can be drawn from comparing the wording of two such similar sections of the same statute, it would be that negligent design is not an exception to liability under the Act unless the legislature has said so, as it clearly did in Section 41–4–11, and just as clearly, as it did not do in Section 41–4–6. *Cf. Patterson v. Globe Am. Cas. Co.,* 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App.1984) (where legislature has demonstrated that it can create a private right of action when it wants to, the fact that no such language appears in the Unfair Insurance Practices Act indicates, by negative inference, that the legislature did not intend to create one).

10. We also observe that on several occasions our Supreme Court has rejected a narrow view of "operation or maintenance" with respect to public buildings, in favor of a broad interpretation of Section 41–4–6 which places upon the state a duty to exercise reasonable care to prevent or correct dangerous conditions on public property. *See Bober v. New Mexico State Fair,* 111 N.M. 644, 653, 808 P.2d 614, 623 (1991) (discussing duty of land owner to exercise ordinary care to avoid creating or permitting an unreasonable risk of harm to others); *Castillo v. County of Santa Fe,* 107 N.M. 204, 206–07, 755 P.2d 48, 50–51 (1988); *see also Ford v. Board of County Comm'rs,* 118 N.M. 134, 139, 879 P.2d 766, 771 (1994) (abolishing invitee-licensee distinction with respect to duty of care to "act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances"). This duty includes acting " 'reasonably to inspect the premises to discover possible dangerous conditions of which he does not know, and tak[ing] reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use of the property." ' *Seal v. Carlsbad Indep. Sch. Dist.,* 116 N.M. 101, 104, 860 P.2d 743, 746 (1993) (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 61, at 425–26 (5th ed.1984) (footnotes omitted)). Although our Supreme Court has not had occasion to discuss the specific issue of negligent design of a public building under Section 41–4–6, we do note that in *Silva v. State,* 106 N.M. 472, 745 P.2d 380 (1987) the Court reversed a grant of summary judgment for the state and held that Section 41–4–6 was "arguably applicable" to a claim of premises liability for the wrongful death of a suicidal prison inmate which included allegations of defective design of the prison. *Silva,* 106 N.M. at 477 (arguably applicable), 482 (description of claim), 745 P.2d at 385, 390. *But see Espinoza v. Town of Taos,* 120 N.M. 680, 683, 905 P.2d 718, 721 (1995) (citing Court of Appeals in dictum, and without discussion, for proposition that Section 41–4–6 does not grant a waiver for claims of negligent design).

11. A close analysis of New Mexico case law reveals that the so-called design exception to liability under Section 41–4–6 is based almost entirely upon a reading, and at times a misreading, of the prior opinions of this Court, not the Supreme Court. We believe the time is ripe to correct any continuing misapprehension regarding the import of that case law.

12. The Court of Appeals opinion most often cited for this proposition is *Rivera v. King* 108 N.M. 5, 12, 765 P.2d 1187, 1194 (Ct.App.1988). In that case, the estate of an inmate victim of the infamous 1980 prison riot sued for wrongful death and based the complaint partially upon a claim of unsafe design of the prison. The suit alleged "a number of ways in which the design of the penitentiary proximately caused" the plaintiff's death by failure to keep him separate from other riotous inmates. This Court rejected these broad claims based upon a prison not designed to be secure, just as it had earlier rejected similar claims under Section 41–4–6 based upon lack of security and improper classification of inmates. *See Rivera,* 108 N.M. at 12, 765 P.2d at 1194; *Gallegos v. State,* 107 N.M. 349, 350–52, 758 P.2d 299, 300–02 (Ct.App.1987); *Wittkowski v. State,* 103 N.M. 526, 530, 710 P.2d 93, 97 (Ct.App. 1985), *overruled on other grounds by Silva,* 106 N.M. at 477, 745 P.2d at 385.

13. However, when the estate did make a proper premises liability claim for an injury actually caused by a physical defect in the

property, this Court allowed the suit to continue, even though the claim was rooted in defective design. We allowed allegations that prison officials had "negligently operated and maintained the penitentiary and its buildings ... by, among other things, failing to timely renovate or repair riot control grilles so that they could be operated by remote control." *Rivera,* 108 N.M. at 12, 765 P.2d at 1194. In other words, a defect in the physical premises causing or contributing to the injury, which the state should have corrected in the exercise of ordinary care (a grille designed without remote control), was actionable as negligent operation or maintenance under Section 41–4–6, whereas a global claim of failing to design a sufficiently secure prison was not. Subsequent case law of this Court speaks in a similar vein. *See Yardman v. San Juan Downs, Inc.,* 120 N.M. 751, 760, 906 P.2d 742, 751 (Ct.App.) (improper design and layout of a race track railing did not preclude claim for negligence in ongoing "operation or maintenance" of that track with regard to the faulty railing that contributed to injury), *certs. denied,* 120 N.M. 636, 904 P.2d 1061 (1995); *Callaway v. New Mexico Dep't of Corrections,* 117 N.M. 637, 642, 875 P.2d 393, 398 (Ct.App.1994) (where inmate injury caused in part by uncorrected blind corners in the layout of the physical premises, claim allowed to proceed).

■ 14. It is important that *Rivera* be construed in proper context. At that time, nearly ten years ago, the Court of Appeals was interpreting Section 41–4–6 restrictively, limiting waiver of tort liability to situations of premises liability by requiring that the injury actually be caused by a physical defect in the building. *See, e.g., Gallegos,* 107 N.M. at 350–52, 758 P.2d at 300–02; *Martinez v. Kaune Corp.,* 106 N.M. 489, 491, 745 P.2d 714, 716 (Ct.App.1987); *Pemberton v. Cordova,* 105 N.M. 476, 478, 734 P.2d 254, 256 (Ct.App.1987); *Wittkowski,* 103 N.M. at 529–30, 710 P.2d at 96–97. Thereafter, our Supreme Court made clear that "[w]hile Section 41–4–6 may appropriately be termed a 'premises liability' statute, the liability envisioned by that section is not limited" only to injuries caused by physical defects on the property, *Bober,* 111 N.M. at 653, 808 P.2d at 623, and the Supreme Court expressly rejected the foregoing opinions of this Court to the contrary on which *Rivera* had relied. *Compare id.* at 652 n. 9, 808 P.2d at 622 n. 9 *with Rivera,* 108 N.M. at 12, 765 P.2d at 1194. The crucial point for our analysis is that although Section 41–4–6 now waives tort immunity for a wider variety of negligent acts in the operation or maintenance of public property, the Section still includes the core principles of premises liability. Regardless of what else Section 41–4–6 might cover, it can still be said that the Section "is in general intended to allow people to sue in premises liability situations;" that is, "for injuries sustained due to defects in buildings." *Rivera,* 108 N.M. at 12, 765 P.2d at 1194.

■ 15. The case before us presents a classic "premises liability situation" in which the injury is allegedly caused by a defect in the physical premises. Under modern principles of tort law, the owner or occupier of the premises has a duty to visitors of reasonable care to prevent or correct dangerous conditions on the premises. *Bober,* 111 N.M. at 647–51, 808 P.2d at 617–21; *see* UJI 13–1309, NMRA 1997. For claims involving private parties that responsibility may include a non-delegable duty to be accountable for the work of independent contractors under circumstances that create special dangers to the public. *See* Restatement (Second) of Torts §§ 416–429 (1965) (stating rules of vicarious liability making employers liable for negligence of independent contractors); Joseph A. Page, *The Law of Premises Liability* § 4.15, at 95 (2d ed.1988) (same). Such special dangers may include "[c]onditions not unreasonably dangerous to adults [that] may be dangerous to a child." Page, *supra,* § 4.15, at 95. A private possessor of land may have such a non-delegable duty when he or she "entrusts to an independent contractor construction, repair, or other work on the land, or on a building." Restatement, *supra,* § 422, at 405; *see also Otero v. Jordon Restaurant Enters.,* 119 N.M. 721, 723–24, 895 P.2d 243, 245–46 (Ct.App.1995) (adopting Restatement, *supra,* § 422 as New Mexico law), *aff'd on other grounds,* 122 N.M. 187, 922 P.2d 569 (1996); *Broome v. Byrd,* 113 N.M. 38, 41, 822 P.2d 677, 680 (Ct.App.1991) (same); *Ft. Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962 (1990) (en

banc) (discussing Restatement, *supra*, § 422 and applying it to Arizona law). Vicarious liability specifically includes work delegated to an independent architect. *See* Restatement, *supra*, § 422 cmt. d, at 406–07. Therefore, it seems safe to say that under the law of premises liability applicable to private parties, there is not necessarily an exception for defects originating in design. *See Monett v. Dona Ana County Sheriff's Posse*, 114 N.M. 452, 457–60, 840 P.2d 599, 604–07 (Ct.App.1992) (discussing premises liability of various occupiers of land for negligence in the "configuration" and "physical design" of the premises that created a hazardous condition resulting in injury); *see also* Page, *supra*, § 4.6, at 81 (discussing premises liability for hidden danger of glass door panel which at certain angles might be confused for open space). We do not mean to suggest that the state can be held vicariously liable under the Tort Claims Act for the negligence of independent contractors. Nor do we suggest that the state can be held strictly liable under Section 41–4–6. *See Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 402–03, 827 P.2d 102, 117–18 (1992). Nonetheless, under the express wording of Section 41–4–6, the state is responsible for acts of negligence of its own "public employees" which cause or permit a dangerous condition on the premises.

■ 16. Even if a building is designed by an independent private architect, the state is responsible for its own duty of care in and around the work of the architect as part of its "operation or maintenance" of the building. For example, any employer can be held liable for negligence in the selection of an independent contractor. *See* Restatement (Second) of Torts § 411 (1965). After a contractor's work is completed, the employer may have a duty to inspect and otherwise "exercise such care as the circumstances may reasonably require him to exercise to ascertain whether the land ... is in reasonably safe condition after the contractor's work is completed." Restatement (Second) of Torts § 412 (1965). The "most usual application [of this duty] is to the possessors of land who entrust the work of erecting or repairing a building thereon to a contractor." Restatement, *supra*, § 412 cmt. b, at 382. In other words, under common principles of premises

liability as applied to the state by Section 41–4–6, and even accounting for limits on vicarious liability, the state as owner or occupier of land has its own responsibility of due care for the safe condition of the physical premises, and that duty is made no more or any less compelling by the presence of defects in design.

■ 17. Turning to the case at hand, it is clear that the trial court erred when it declared Defendant immune from suit under the Act simply because the unsafe window may have been rooted in a design defect. We do not say that Defendant is vicariously liable for negligence of the architect as an independent contractor. However, Defendant's duty certainly includes the exercise of due care by its own employees with respect to a physical premises that has been rendered unsafe for its foreseeable use. Defendant has such a duty by operation of law regardless of whether the dangerous condition originated in a defect in design. It is up to Plaintiff to prove a breach of that duty by Defendant's employees, as alleged, as well as proximate cause, in regard to what transpired or what should have transpired in the exercise of ordinary care during the days, months, and years after the architect completed its work and when Defendant's employees walked that same school hallway that had allegedly been rendered unsafe for school children. This breach by Defendant must be separate from whatever breach of duty the architect may have committed. We, of course, entertain no opinion on whether Plaintiff can sustain his burden; we simply conclude that nothing in Section 41–4–6 bars Plaintiff from his right to try.

**CONCLUSION**

18. We reverse the district court's order of dismissal and remand for further proceedings consistent with this opinion. Because of our ruling, we need not discuss other matters raised on appeal.

19. **IT IS SO ORDERED.**

PICKARD and ARMIJO, JJ., concur.