2002-NMCA-068

48 P.3d 761

**Geraldine GUTIERREZ, as the parent and guardian of Samuel Gutierrez, a minor, Plaintiff–Appellant,**

v.

**WEST LAS VEGAS SCHOOL DISTRICT, Defendant–Appellee.**

**No. 22,386.**

Court of Appeals of New Mexico.

May 3, 2002.

David P. Garcia, Montoya, Murphy & Garcia, George T. Geran Santa Fe, NM, for Appellant.

H. Nicole Schamban, Narvaez Law Firm, P.A., Albuquerque, NM, for Appellee.

## OPINION

SUTIN, Judge.

{1} This appeal tests the scope of the waiver of governmental immunity for alleged negligence in operating public premises under NMSA 1978, § 41–4–6 (1977) of the Tort Claims Act, NMSA 1978, § 41–4–1 to –29 (1976, as amended through 2001) (TCA). Samuel Gutierrez (Samuel), a student at West Las Vegas Middle School, was injured while he and fellow band students participated in a multi-school Mariachi event sponsored by the University of New Mexico (UNM) at the Albuquerque High School (AHS) auditorium.

{2} Geraldine Gutierrez, Samuel's mother, claims the West Las Vegas School District (the District) is liable in negligence under the TCA because one of its teachers left the students unsupervised with music stands, allowing a dangerous condition that resulted in injury. She asserts waiver of TCA immunity, arguing that the District operated the AHS auditorium jointly with other schools, as contemplated by Section 41–4–4(I) and (J). The trial court granted the District's motion to dismiss under Rule 1–012(B)(6) NMRA 2002.

{3} We affirm the district court based on our view that under Section 41–4–6, even assuming teacher negligence, the District was not operating the AHS property. Therefore the District shares no liability under the TCA and we need not address the issue whether the teacher's temporary absence from the AHS auditorium was negligent.

## BACKGROUND

{4} The West Las Vegas Middle School Mariachi Paisanos (the Band) attended a Mariachi event conducted, supervised, and controlled by UNM in the AHS auditorium. The Band's teacher, Martin Sena, arranged the trip and had the responsibility of supervising the Band during the overnight excursion. At Sena's request, four or five parent-chaperons accompanied the Band. In the 350–seat auditorium, with other school bands,

the Band awaited the start of the official program. Sena left the auditorium to engage in other administrative tasks related to the event, leaving the Band with the parent-chaperons. Because the auditorium was barely large enough to hold the participants, the parent-chaperons were excluded from the auditorium by event staff, leaving student participants unsupervised, except for four or five event workers.

{5} No provision had been made for the students to check their music stands. Samuel was injured when he and other male members of the Band began to hit each other as they played one of their usual games. One boy, while holding a folded music stand, jerked his arm out of the way of getting hit by another boy, and in doing so, stabbed Samuel's eye with one of the stand's pointed ends.

{6} Among other things, Gutierrez claims that Sena had a statutory duty to supervise the Band pursuant to NMSA 1978, § 22–10–5(D) (1975), and that the District, along with UNM and AHS, jointly operated the AHS property pursuant to Section 41–4–4(I) and (J). The trial court dismissed the first amended complaint with prejudice. Gutierrez appeals.

## DISCUSSION

### Standard of Review

{7} In reviewing a dismissal under Rule 1–012(B)(6), "[we assume] the truth of the facts alleged in the complaint. A motion to dismiss should be granted only if it appears that upon no facts provable under the complaint could the plaintiff recover or be entitled to relief." *Castillo v. County of Santa Fe*, 107 N.M. 204, 205–06, 755 P.2d 48, 49–50 (1988) (citation and emphasis omitted).

### Gutierrez's Argument on Waiver of Governmental Immunity

{8} Gutierrez invokes the premises liability waiver in Section 41–4–6:

The immunity granted pursuant to [the TCA] does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings. Nothing in this section shall be construed as granting waiver of immunity for any damages arising out of the operation or maintenance of works used for diversion or storage of water.

{9} She asserts the District may be sued for the failure of its public employees to perform duties even if the building involved is that of another school. *See* § 41–4–3(G) (defining scope of duties to mean performance of "any duties that a public employee is requested, required or authorized to perform ... regardless of the time and place of performance"); *Cobos v. Doña Ana County Hous. Auth.*, 1998–NMSC–049, ¶ 8, 126 N.M. 418, 970 P.2d 1143. Gutierrez cites a statutory duty imposed on teachers to "exercise supervision over students on property belonging to the public school or state agency and while the students are under the control of the public school or state agency." § 22–10–5(D). Accordingly, Gutierrez argues that the District had a duty to supervise the Band on the AHS property.

{10} With this foundation, Gutierrez cites two TCA provisions relating to jointly operated public schools to show that the District participated in the operation of the AHS property, implicating Section 41–4–6. The first provision, Section 41–4–4(I), reads:

A jointly operated public school, community center or athletic facility that is used or maintained pursuant to a joint powers agreement shall be deemed to be used or maintained by a single governmental entity for the purposes of and subject to the maximum liability provisions of Section 41–4–19 NMSA 1978.

The second provision, Section 41–4–4(J), reads:

a 'jointly operated public school, community center or athletic facility' includes a school, school yard, school ground, school building, gymnasium ... that is owned or leased by a governmental entity and operated or used jointly or in conjunction with another governmental entity for operations, events or programs that include sports or athletic events or activities, childcare or youth programs, after-school or

before-school activities or summer or vacation programs at the facility.

{11} Gutierrez argues that subsection (J) includes the Mariachi event, which she states was "jointly operated" by a number of schools. "Operated," she states, as used in subsection (J), means the same as "operation" as used in Section 41–4–6. Construing Section 41–4–4 in the context of Section 41–4–6 in this way, Gutierrez argues that all schools jointly attending and using the AHS property for the event are subject to suit, because the AHS property is a subsection-(J) school building "owned or leased by a governmental entity . . . for operations, events or programs." § 41–4–4(J). Any other construction of subsections (I) and (J) of Section 41–4–4, Gutierrez contends, would render them "completely unnecessary" and a "nullity." Gutierrez thus concludes that Section 41–4–6 permits her action because the District failed "to exercise reasonable care to prevent or correct dangerous conditions" on the AHS property. *Williams v. Cent. Consol. Sch. Dist.*, 1998–NMCA–006, ¶ 10, 124 N.M. 488, 952 P.2d 978.

{12} In sum, Gutierrez asserts the District performed activities covered by Sections 22–10–5(D) and 41–4–4(I) and (J), constituting a TCA waiver of immunity under Section 41–4–6. That is, Sena negligently caused Samuel's injury by allowing a dangerous condition on property owned by AHS but jointly operated by the District, UNM, and other schools.

**The Issue of Operation or Maintenance of the AHS Property**

{13} Gutierrez claims the District is liable under the Section 41–4–6 immunity waiver based on a theory of joint operation of the AHS property. She relies on Sections 41–4–4(I) and 41–4–19, which set a cap for governmental liability incurred during the execution of a joint powers agreement.

{14} "Joint powers agreement" is a term of art in New Mexico. The Joint Powers Agreements Act, NMSA 1978, §§ 11–1–1 to 7 (1961, as amended through 1999), specifically grants authority under certain circumstances for "public agencies by agreement [to] jointly exercise any power common to the contracting parties." § 11–1–3. "Public agency" in-

cludes New Mexico educational institutions specified in N.M. Const. art. XII, § 11, including UNM and New Mexico school districts. § 11–1–2(A). The legislative or other governing body of the public agencies must authorize any joint powers agreement, *see* § 11–1–3, which must "clearly specify the purpose of the agreement or for any power which is to be exercised." § 11–1–4(A). The "administering agency" chosen to "administer or execute the agreement" is to be considered as "an entity separate from the parties to such agreement." § 11–1–5(A), (B). Officers, agents, and employees of school districts retain whatever "immunities from liability" they otherwise may have. § 11–1–6.

■ {15} The Joint Powers Agreements Act was first enacted in 1961. Section 41–4–4(I) was added to the Tort Claims Act in 1996. The Legislature is presumed to know existing statutory law and to take that law into consideration when enacting new law. *See In re PNM Gas Servs.*, 2000–NMSC–012, ¶ 73, 129 N.M. 1, 1 P.3d 383. We do not believe that in enacting Section 41–4–4(I) the Legislature intended "joint powers agreement" to mean something different than that stated in the Joint Powers Agreements Act.

■ {16} Gutierrez focuses on the words "jointly operated public school" in Section 41–4–4(I). To her, the significant concept in subsections (I) and (J) is that schools "cooperate" a facility. In her view of these provisions, a joint powers agreement has significance only as it relates to recovery when more than one school is involved. The schools each can be sued, "though recovery may, in the specific case of a 'joint powers agreement,' be limited to one damages cap"; that is, "no matter how many schools [are] involved, where 'a joint powers agreement' governs the schools' relationship," the allowable recovery is limited to one TCA damages cap. The flaw in Gutierrez's analysis is that she attempts to sever "jointly operated public school" from its full definition in subsection (I) as one that "is used or maintained pursuant to a joint powers agreement." § 41–4–4(I).

{17} Operation of a property under subsections (I) and (J) occurs by definition based on a joint powers agreement. Without the

cap limitation in Section 41–4–19, damages would be greater than the Legislature has chosen to permit. Nothing in these (I) and (J) definitional subsections defines "operation" referred to in Section 41–4–6.

{18} Gutierrez presents no evidence that anyone sought the approval required by Section 11–1–3 from the secretary of finance and administration for any joint powers agreement regarding the Mariachi event. *See* § 11–1–3. We have no evidence that any approved joint powers agreement between the educational institutions in this case was reported to the state board of finance at a public meeting, also required by statute. *See id.* Gutierrez failed to show any statute-required list of approved agreements that includes the purported joint powers agreement. *See id.*

{19} Thus, Gutierrez has not proven a joint powers agreement exists and she therefore cannot apply Section 41–4–4(I) and (J) to the circumstances in this case. Under the facts alleged by Gutierrez, the District does not have a duty to operate the AHS property. No facts alleged by Gutierrez can prove the District engaged in the operation of the AHS property as contemplated under Section 41–4–6. We determine subsections (I) and (J) of Section 41–4–4 to be inapplicable.

{20} We therefore hold the immunity granted in Section 41–4–4(A) of the TCA applies. The waiver in Section 41–4–6 does not apply because the District was not engaged in the operation of the AHS property. As we indicated earlier in this opinion, because we base our decision on this ground, we decline to address the issues relating to negligent supervision.

CONCLUSION

{21} We affirm the trial court's dismissal of the action under Rule 1–012(B)(6) for failure to state a claim on which relief may be granted.

{22} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, Judge, and MICHAEL D. BUSTAMANTE, Judge.