## HAUFF V. CITY OF ALBUQUERQUE

This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**ANDREA HAUFF,**
**Plaintiff-Appellant,**
**v.**
**CITY OF ALBUQUERQUE, and**
**THE ANIMAL HUMANE ASSOCIATION**
**d/b/a ALBUQUERQUE ANIMAL CONTROL CENTER,**
**Defendants-Appellees.**

No. A-1-CA-36202

COURT OF APPEALS OF NEW MEXICO

February 14, 2019

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Denise Barela Shepherd, District Judge

**COUNSEL**

Houston Ross, Albuquerque, NM, for Appellant

City of Albuquerque Office of the City Attorney, Jessica L. Nixon, Assistant City Attorney, Albuquerque, NM, for Appellees

**JUDGES**

LINDA M. VANZI, Judge. WE CONCUR: JENNIFER L. ATTREP, Judge, JACQUELINE R. MEDINA, Judge

**AUTHOR:** LINDA M. VANZI

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}**     Plaintiff Andrea Hauff sued the City of Albuquerque, doing business as the Animal Welfare Department (the Department) (collectively, Defendants), alleging that Defendants' staff failed to inform her of the behavioral history of a cat Plaintiff adopted from the Department, which later bit Plaintiff, causing injuries requiring hospitalization. The district court granted Defendants' motion to dismiss the complaint on the ground that Plaintiff failed to state a claim for which immunity had been waived under the New Mexico Tort Claims Act, NMSA 1978, Sections 41-4-1 through -27 (1976, as amended through 2015) (the NMTCA). We affirm.

**BACKGROUND**

**{2}**     In her complaint, Plaintiff made the following allegations.

> 6.     In February 2014 [P]laintiff adopted a cat from [the Department]. It is believed that cat was ID 1588268 and named Caspia.

> 7.     Plaintiff was looking to adopt a cat as a household pet for herself and [her] young child.

> 8.     When she adopted Caspia . . . [P]laintiff [was] not advised that the cat had any behavioral problems that would require special care or handling. In fact, on the day after she adopted Caspia, [P]laintiff received a call from the director of [the Department] assuring her that Caspia was [a] good and gentle pet.

> 9.     However, on or about 2/20/14 as [P]laintiff tried to retrieve Caspia from behind a couch at home, Caspia bit [P]laintiff on the hands. The cat locked her jaws around one hand [and] would not let go.

> 10.     As a result of the bites[, P]laintiff spent several days in the hospital, had surgery, incurred about $18,000 in medical bills and may have permanent injuries to her hands.

> 11.     Upon returning Caspia to [the Department], Allison Briggs[,] the intake person she returned the cat to[,] asked "didn't anybody tell you that this cat was in a behavioral class for very scared cats?"

Plaintiff asserted that Defendants had a duty to disclose Caspia's "known behavioral problems that . . . may have increased the likelihood that she would act dangerously and unpredictably[,]" and further alleged that

> 19.     Defendants knew that Caspia had been in very scared cat behavioral classes but failed to disclose that information to the plaintiff at the time of adoption.

20.     Defendants not only failed to disclose that Caspia had behavioral problems at the time of adoption but called [P]laintiff the day after praising Caspia as a good and gentle pet.

21.     As a result of [D]efendants' breach of duty[, P]laintiff suffered damages in the form of medical bills, pain and suffering, emotional distress, permanent injury and other damages as shall be shown at trial.

22.     The actions of [the Department] as set out in this complaint were wanton, reckless or intentional and entitle plaintiff to an award of punitive damages.

Plaintiff sought damages for Defendants' alleged negligence, as well as a declaratory judgment that the release she signed as part of the adoption was unenforceable. Defendants answered the complaint and served discovery requests on Plaintiff, to which Plaintiff responded. When Plaintiff failed to prosecute the matter, including failing to conduct her own discovery, the district court dismissed the complaint on its own motion. *See* Rule 1-041(E)(2) NMRA ("Unless a pretrial scheduling order has been entered pursuant to Rule 1-016 NMRA, the court on its own motion . . . may dismiss without prejudice the action . . . if the party filing the action or asserting the claim has failed to take any significant action . . . within the previous one hundred and eighty (180) days."). Thereafter, the parties litigated Plaintiff's motion to reinstate, which the district court eventually granted. Plaintiff filed a motion for a scheduling conference and issued interrogatories and a request for production to Defendants, to which they responded. A subsequent scheduling order set out deadlines for discovery and other matters. Rule 1-016(B) (addressing scheduling orders).

{3}     Defendants then filed a motion for judgment on the pleadings, arguing that, even if Plaintiff's allegations are true, she failed to state a claim for which immunity had been waived under the NMTCA. *See* Rule 1-012(C) NMRA (providing that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings"). Plaintiff responded to Defendants' arguments, but did not request leave to amend the complaint. After a hearing, the district court granted Defendants' motion in a written order. Plaintiff appeals.

**DISCUSSION**

{4}     "We review judgments on the pleadings made pursuant to Rule 1-012(C) . . . according to the same standard as motions for failure to state a claim under Rule 1-012(B)(6)[.]" *Vill. of Angel Fire v. Bd. of Cty. Comm'rs*, 2010-NMCA-038, ¶ 5, 148 N.M. 804, 242 P.3d 371. "A motion to dismiss for failure to state a claim . . . tests the legal sufficiency of the complaint[.]" *Derringer v. State*, 2003-NMCA-073, ¶ 5, 133 N.M. 721, 68 P.3d 961. "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint." *Delfino v. Griffo*, 2011-NMSC-015, ¶ 9, 150 N.M. 97, 257 P.3d 917 (internal quotation marks and citation omitted). "Dismissal . . . is appropriate only if the plaintiff is not entitled to recover under any theory of the

facts alleged in [her] complaint." *Id.* ¶ 12 (first alteration, internal quotation marks, and citation omitted). We review the district court's Rule 1-012(C) ruling de novo. *See id.* ¶ 9.

**{5}**     Under the NMTCA, "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12[.]" Section 41-4-4(A). The waiver provision relied upon by Plaintiff herein, known as the "building waiver," waives immunity for "liability for damages resulting from bodily injury, wrongful death[,] or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building[.]" Section 41-4-6(A). To fall within the ambit of Section 41-4-6(A), a claimant may allege either (1) the existence of some physical defect on the premises; or (2) the operation or maintenance of "a facility in such a way as to create an unsafe or dangerous condition on the property or in the immediate vicinity." *Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 5, 123 N.M. 353, 940 P.2d 459. Plaintiff argues that her claim falls within the latter type of waiver. We disagree for two reasons.

**{6}**     First, Plaintiff's complaint does not allege any facts suggesting that Defendants' negligence created "a general condition of unreasonable risk" for which the NMTCA waives immunity. *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 20, 140 N.M. 205, 141 P.3d 1259 (internal quotation marks and citation omitted); *see Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 13, 310 P.3d 611 ("There can be no waiver under Section 41-4-6(A) without a dangerous condition on the premises, and a single act of student-on-student violence does not render the premises unsafe."). We explain.

**{7}**     In *Archibeque v. Moya*, our Supreme Court held that "Section 41-4-6 does not waive immunity when public employees negligently perform . . . administrative functions[,]" such as assignment of an inmate to the general population within the prison. 1993-NMSC-079, ¶ 8, 116 N.M. 616, 866 P.2d 344; *see Upton*, 2006-NMSC-040, ¶ 17 (stating that "the [NM]TCA does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public"). In *Archibeque*, the plaintiff told a prison intake officer that one of his enemies was housed in the prison. 1993-NMSC-079, ¶ 2. Without first checking an available printout of current inmates, the prison intake officer told the plaintiff that his enemy was no longer imprisoned at the penitentiary. *Id.* The officer then permitted the plaintiff to be released into the general prison population. *Id.* "That night, [the plaintiff] was assaulted by [his enemy] and several other inmates in the prison weight room." *Id.* The Court held that, while the prison intake officer's misclassification of the plaintiff put him at risk, the building waiver did not apply because "the negligence did not create an unsafe condition on the prison premises as to the general prison population." *Id.* ¶ 11. Moreover, the Court said, the prison intake officer was not "operating and maintaining the prison's physical premises when she negligently classified [the plaintiff] as an inmate that could be released into the general prison population." *Id.* ¶ 8. Instead, the officer was "performing an administrative function

associated with the operation of the corrections system. Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions." *Id.* This Court subsequently distinguished *Archibeque* in *Callaway v. New Mexico Department of Corrections*, a case in which the plaintiff alleged that he had been injured by the defendants' negligence "in allowing known, dangerous gang members to roam loose among the general prison population." 1994-NMCA-049, ¶ 13, 117 N.M. 637, 875 P.2d 393. In *Callaway*, we held that the plaintiff's allegations that the prison population as a whole was unsafe because of the defendants' failure to properly manage the housing of known gang members were substantively different from those in *Archibeque*, where the plaintiff's misclassification related to him alone and did not endanger the rest of the prison population. *See id.* ¶ 18.

**{8}** Here, Plaintiff alleges that Defendants' employees negligently failed to inform her of Caspia's history in a program for "very scared" cats. Although Plaintiff argues on appeal that Defendants could have failed to warn another adopter, her complaint does not allege that Defendants failed to institute or follow a policy to protect adopters from cats that have behavioral issues or that the management of the "very scared cats" posed a danger to users of the Department's adoption facility in general. Hence, we conclude that, because Plaintiff's allegations involve a discrete administrative function, her complaint more closely resembles the allegations in *Archibeque* than the factual scenario set forth in the complaint in *Callaway*. For this reason, we hold that immunity under the NMTCA has not been waived.

**{9}** Second, the failure of Defendants' employee to warn Plaintiff did not create an unsafe condition "on the property" operated and maintained by Defendants. *See Leithead*, 1997-NMCA-041, ¶ 5. Plaintiff points to *Young v. Van Duyne* in support of her argument that a failure to warn falls within the building waiver. 2004-NMCA-074, ¶ 5, 135 N.M. 695, 92 P.3d 1269. However, *Young* does not support Plaintiff's position. In that case, although the allegations concerned the Children, Youth and Families Department's (CYFD) failure to warn the plaintiff of the dangerous potential of a child placed in foster care, the critical issue was whether CYFD "operated" the building where the dangerous condition occurred, namely the foster home. *Id.* ¶¶ 19-23. The *Young* Court distinguished between the failure to warn before the child was placed in the foster home, which was arguably "operated" by CYFD, and the failure to warn after the child was adopted, when CYFD's obligations to oversee the home were minimal, if not nonexistent. *Id.* ¶¶ 25-30. This Court held that the plaintiff "must be permitted to proceed on the merits of his claim that CYFD *operated the Youngs' foster home* within the meaning of the Section 41-4-6 immunity waiver." *Id.* ¶ 23 (emphasis added). However, as to the plaintiff's claims related to CYFD's failure to disclose after the child was adopted, we said, "We . . . have before us no statute or regulation that creates any duty or responsibility of CYFD and its employees, after an adoption is finalized, with respect to supervision, oversight, operation, or maintenance of the home into which a child is placed for adoption, after an adoption becomes final." *Id.* ¶ 27. We then concluded that there was "no reasonable basis . . . to broaden the waiver in Section 41-4-6[(A)] to apply to the post-adoption knowledge and negligent failure to disclose" where the plaintiff

adduced no statute or regulation, nor alleged any facts, to "support his position that . . . CYFD was operating the home." *Id.* ¶ 30.

**{10}** This Court subsequently relied on *Young* for the proposition that "the building waiver may apply when an agency undertakes to provide housing for clients when permitted or required to do so under specific statutory authority." *Quevedo v. New Mexico Children, Youth & Families Dep't*, 2016-NMCA-101, ¶ 13, 385 P.3d 657. In *Quevedo*, we held that, where a series of statutes and regulations imposed on CYFD "an obligation to house children in its care in homes or facilities that meet certain minimum health and safety standards[,]" these obligations may create "a relationship between CYFD, the homes or facilities in which children are placed, and the children[,]" and "the waiver of immunity in Section 41-4-6(A) permits suit against CYFD *when such a relationship exists*." *Id.* ¶ 17 (emphasis added).

**{11}** In this case, Plaintiff's complaint does not allege any facts demonstrating that Defendants operated or maintained her home, i.e., that Defendants' failure to warn her of Crespia's history created a dangerous condition in a building operated or maintained by Defendants. Consequently, under *Young*, the waiver of immunity pursuant to Section 41-4-6(A) does not apply to these facts. *See* 2004-NMCA-074, ¶ 30 (holding that the plaintiff's allegations of negligent failure to disclose did not fall within Section 41-4-6(A) where CYFD did not operate or maintain the adoptive home); *see also Archibeque*, 1993-NMSC-079, ¶ 8 ("The purpose of Section 41-4-6[(A)] is to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by the government.").

**{12}** In her final argument, Plaintiff contends that the allegations in her complaint "are sufficient to allow [her] to proceed in the case to discover if [Defendants] had safety policies that were designed to prevent dangerous cats from being placed for adoption[,]" if those policies were violated, and, if no policies were in place, whether the "failure to have such policies in place contribute[d] to the danger [posed to Plaintiff] and other[s] who went to Animal Control while the cat was up for adoption[.]" In essence, Plaintiff maintains that she may be able to amend her complaint to allege facts to bring her claim within the building waiver if she is permitted to conduct additional discovery. This argument is unavailing.

**{13}** To begin with, Plaintiff failed to seek discovery on these matters or to raise this issue in the district court. In fact, although she sought discovery through interrogatories and requests for production in August 2016, she admitted at the hearing on Defendants' motion that she "didn't specifically allege that [Defendants] violated a particular policy, because [she] wasn't aware of what their policies were." In addition, Plaintiff failed to seek the district court's leave to amend her complaint even after she knew that Defendants were arguing that they are immune under the NMTCA. *See* Rule 1-015(A) NMRA ("[A] party may amend its pleading only by leave of court [after a responsive pleading has been filed] and leave shall be freely given when justice requires."). Plaintiff also failed to alert the district court that she required additional discovery in order to respond to Defendants' motion. *Cf. Richey v. Hammond Conservancy Dist.*, 2015-

NMCA-043, ¶ 5, 346 P.3d 1183 (noting that the "[p]laintiff moved to stay [the d]efendant's Rule 1-012(B)(6) motion pending discovery"). Indeed, after the hearing on the motion to dismiss, Plaintiff joined Defendants in a motion to vacate the trial setting, stating, "further discovery, and the costs thereof, [has been] deferred in anticipation of [the district c]ourt's ruling on . . . Defendants' Motion to Dismiss Pursuant to the [NMTCA]."

**{14}** Moreover, "[a]mendments [that] alter or change the theory of a case [from that presented to the district court] are not permitted on appeal." *Houston v. Young*, 1980-NMSC-053, ¶ 7, 94 N.M. 308, 610 P.2d 195. In *Houston*, our Supreme Court held that the plaintiff would not be permitted to amend her complaint on appeal where "[t]he record show[ed] no motion to amend was made by [the] plaintiff at the [district] court level" because "[t]he right to amend terminates upon entry of a final order or judgment." *Id.* Similarly, because Plaintiff failed to raise the issue before the district court and the right to amend terminated on entry of the district court's order, we decline to address this contention further.

**CONCLUSION**

**{15}** We conclude that the allegations in Plaintiff's complaint do not state a claim falling within the waiver of immunity in Section 41-4-6(A). Therefore, we affirm the district court's order dismissing Plaintiff's complaint.

**{16}  IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JACQUELINE R. MEDINA, Judge**